**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| SONDRA JENNINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-CV-00091-SPM |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Sondra Jennings ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 6). Because the Court finds the decision denying benefits was supported by substantial evidence, the Court will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

.

I.      **FACTUAL BACKGROUND**

At the hearings before the Administrative Law Judge (ALJ) on December 22, 2021 and September 14, 2023, Plaintiff and her attorney told the ALJ that Plaintiff suffers from ongoing intermittent claudication,[2] which has required her to undergo multiple angioplasty procedures and cardiac catheterization. (Tr. 84-85). Plaintiff testified that she has numerous stents around her heart and on her right leg. (Tr. 90-91). Plaintiff further explained that she has congestive heart failure and that she takes medication to prevent fluid from building up in her chest area. (Tr. 92). She testified that approximately once a month, she has chest pain and associated shoulder pain, which medication mostly manages. Plaintiff testified that her peripheral artery disease, in combination with her peripheral neuropathy, affects the distance she can walk due to pain in her calves. She also indicated that her medication makes her unstable when walking and her legs are generally weak from the conditions and/or the medications. (Tr. 93-4). Plaintiff testified she needs to lay down for most of the day due to pain, fatigue, or shortness of breath, and that she accomplishes tasks about 30% of the speed she ordinarily would when she was healthier. (Tr. 141-142). She described pain in her left arm due to a blocked artery that limited her ability to reach for more than about half an hour. (Tr. 143). She testified that she can only lift about a gallon of milk, and only with the use of both her hands. (Tr. 145).

According to Plaintiff and her attorney, Plaintiff often relies on a walker and in-home assistance for performance of her domestic daily activities. (Tr. 86, 95). She cares for her grandchildren, such as preparing food and doing dishes. (Tr. 125). She also uses a cane when she

---

[2] Intermittent claudication is "a condition caused by ischemia of the muscles; characterized by attacks of lameness and pain, brought on by walking, chiefly in the calf muscles; however, the condition may occur in other muscle groups." *Stedman's Medical Dictionary*, 180560 (2010).

leaves the house and goes shopping with the aid of electric carts. (Tr. 95). She can typically only stand for 20 minutes at a time and walk for 15 minutes at a time. (Tr. 144-145).

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. With regard to Plaintiff's medical treatment, the Court will cite to specific portions of the transcript as needed to address the parties' arguments. Briefly, the record shows that since 2019, Plaintiff has frequently sought treatment for pain in connection with ischemic issues in her heart and limbs. Plaintiff has been treated with cardiac catheterization, stent placements, angioplasties, and various medications.

## II.   PROCEDURAL BACKGROUND

On September 3, 2020, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and SSI, alleging that she had been unable to work since December 1, 2016. (Tr. 214, 416-417, 421-427). Her application was denied initially and upon reconsideration, and she filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 193-194, 262-271, 282-284, 285-286). At the hearing, which took place December 22, 2021, Plaintiff amended her alleged onset date to September 3, 2020 and voluntarily withdrew the Title II claim for DIB. (Tr. 76-111). After the hearing, the ALJ issued an unfavorable decision on June 28, 2022. (Tr. 211-243). The Appeals Council remanded Plaintiff's case and an ALJ held another hearing on September 14, 2023. (Tr. 248-254, 112-158). Following the second hearing, the ALJ issued an unfavorable decision on October 4, 2023. (Tr. 14-45).

Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, but the Appeals Council declined to review the case on March 15, 2024. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §416.920(a)(ii); *McCoy*, 648 F.3d at

4

611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

5

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

### IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since September 3, 2020, the application date; that Plaintiff had the severe impairments of obesity, intermittent claudication, kidney disease, diabetes mellitus, neuropathy, disorder of the lumbar and thoracic spine, coronary artery disease (CAD), angina, chronic obstructive pulmonary disease (COPD), degenerative joint disease, dysfunction of the left shoulder, peripheral vascular disease, and arthritis; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 20-24). The ALJ found that Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 416.967(a) except the individual can never climb ladders, ropes, or scaffolds. The individual can occasionally climb ramps and stairs. The individual can occasionally stoop, crouch, but never kneel or crawl. The individual can occasionally use foot controls with the bilateral lower extremities. The individual can reach frequently with the dominate left upper extremity up to the height of the left shoulder, but above the height of the left shoulder the individual can only reach overhead occasionally with the left upper extremity. The individual can have occasional exposure to irritants such as fumes, odors, dust, gasses, and poor ventilation. The individual can have no use of hazardous machinery and no exposure to unshielded moving mechanical parts. The individual can have no exposure to unprotected heights, extreme vibrations, heat, cold, or humidity.

(Tr. 24-25).

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," nonetheless "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 26). The ALJ

6

noted that Plaintiff's "frequency and duration of symptoms has generally been inconsistent," explaining that the medical record "demonstrates that her symptoms have tended to present acute exacerbations, get treated, and then not present for months at a time" and that the symptoms "were not intense enough to cause limitations in her physical functioning (such as gait deficits or range of motion limitations) consistent with her allegations." (Tr. 33). The ALJ observed that stress and significant exertion appeared to be "[a]ggravating factors" for Plaintiff's symptoms, but that the limitations in the RFC adequately reflected such factors. (*Id.*).

Furthermore, the ALJ noted inconsistencies in the limitations alleged by Plaintiff, such as the alleged need for a walker when a walker has not been prescribed for long-term use. (Tr. 33). The ALJ also observed that Plaintiff asserted that she has difficulty sitting, but that her daily activities and behavior during medical examinations did not reflect such difficulty. (*Id.*).

The ALJ also considered the medical opinions in the record. She found the prior administrative findings of state agency consultant Nancy Ceaser, MD to be not persuasive because it was "not consistent with the record as a whole." Specifically, the ALJ noted that Dr. Ceaser opined that Plaintiff could perform "light exertional work except that she can only stand/walk for a total of 2 hours," but that the record "shows that the claimant's impairments, particularly her heart condition which causes weakness and leg pain, limit her to a sedentary exertional level." (Tr. 30). The ALJ also found "not entirely persuasive despite being supported by her professional medical knowledge and first-hand examination of the claimant" the opinion of consultative examiner Lindsey Baumhoer, NP because it was "internally inconsistent regarding the use and need for a walker, but otherwise consistent with exams which were generally fairly normal." (Tr. 32).

7

The ALJ further found the opinion of treating provider Amanda Bader, FNP to be "persuasive as to her walking ability/limitations because it is supported by her professional medical knowledge and first-hand treatment of the claimant" and consistent with the record, which generally showed that Plaintiff maintained a "normal gait" with some shortness of breath and numbness in the claimant's feet due to, *inter alia*, cardiac problems. (Tr. 30). However, the ALJ found Ms. Bader's other opinions on Plaintiff's physical limitations only "partially persuasive" because, while Plaintiff would have "some reasonable limitations associated with her cardiac, neuropathy, shoulder, and back issues," Ms. Bader's opinions were "not entirely consistent with the record" which, in addition to showing that Plaintiff has multiple stents, also "shows fairly normal physical exams." (Tr. 30-31).

Aided by a vocational expert's testimony, the ALJ found that Plaintiff is able to perform past relevant work because her RFC did not preclude the activities involved in her previous work as a hospital admission clerk. (Tr. 33-34). Thus, the ALJ concluded that Plaintiff has not been under a disability from September 3, 2020, through the date of the ALJ's decision. (Tr. 34).

V. **DISCUSSION**

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ erred in analyzing whether her cardiovascular impairments met or equaled Listing 4.04B; and (2) regulations regarding past relevant work have changed and remand is required to allow the agency to apply the changes.

A. **Standard for Judicial Review**

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir.

8

2008)); *see also* 42 U.S.C. § 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004)); *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an

9

error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

### B. The ALJ's Step Three Finding

Plaintiff's first argument is that the ALJ erred in analyzing whether her cardiovascular impairments met or equaled Listing 4.04B in 20 C.F.R. § 404, Subpart P, Appendix 1. Plaintiff argues that she meets Listing 4.04B, and the ALJ failed to adequately give her reasoning for the contrary conclusion. The Court disagrees.

The Listing of Impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings" and, individually, "Listing") "describes for each of the major body systems impairments that [the Commissioner] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). "The claimant has the burden of proving that his [or her] impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "An impairment that manifests only some of these criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "Medical equivalence must be based on medical findings." *Johnson*, 390 F.3d at 1070 (quoting 20 C.F.R. § 416.926(b)).

An impairment is medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). The regulations state that if a claimant has an impairment described in the Listings but one or more of the findings specified is lacking or is not as severe as specified, the Commissioner "will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other findings related to [the claimant's] impairment that are at least of equal medical significance to the

10

required criteria." 20 C.F.R. § 416.926(b)(1). To establish that an impairment equals a listed impairment, "a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Carlson*, 604 F.3d at 594 (quoting *Sullivan*, 493 U.S. at 531).

Here, the ALJ determined that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." In so concluding, the ALJ reasoned:

> The claimant's angina, leg claudication, and coronary artery disease (CAD) does not meet listing 4.04, ischemic heart disease because the claimant does not have symptoms due to myocardial ischemia with: (A) sign-or symptom-limited exercise tolerance test demonstrating certain electrocardiogram, systolic blood pressure, or ischemic changes at a workload of 5 metabolic equivalents ("METs") or less; (B) three separate ischemic episodes, each requiring revascularization or not amenable to revascularization, within a consecutive 12-month period; or (C) coronary artery disease, when a medical consultant has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with angiographic evidence showing certain findings and resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

(Tr. 22).

Plaintiff does not appear to challenge the ALJ's finding as it pertains to Listing 4.04A or 4.04C. However, Plaintiff contends that her cardiovascular impairments equate to Listing 4.04B and the ALJ failed to sufficiently explain how her impairments did not meet or medically equal this Listing. Listing 4.04B (ischemic heart disease) "requires a showing of "[t]hree ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive twelve-month period (see 4.00A3e)." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.04B. "Revascularization means angioplasty (with or without stent placement) or bypass surgery." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 400E(9)(f) (hereafter, "400E(9)(f)"). "Not amenable means that the revascularization procedure could not be

11

done because of another medical impairment or because the vessel was not suitable for revascularization." *Id.* "A consecutive 12–month period means a period of 12 consecutive months, all or part of which must occur within the period we are considering in connection with an application or continuing disability review." *Id.*

Plaintiff asserts three ischemic episodes—occurring in December 2019, June 2020, and July 2020 respectively—satisfy the requirements of the Listing because (a) all three episodes constituted "revascularizations" under the Listing, and (b) the requisite 12-month period began to run from the earliest episode on December 17, 2019, through December 17, 2020. Plaintiff posits that although her disability onset date—September 3, 2020—occurred after the last ischemic episode in July 2020, her ischemic episodes satisfy Listing 4.04B's timing requirement because part of this period (namely, the time between September 2020 and December 2020) falls within the alleged disability period. *See* 400E(9)(f) ("A consecutive 12–month period means a period of 12 consecutive months, all or *part of which* must occur within the period we are considering in connection with an application or continuing disability review.").

Defendant does not dispute that Plaintiff underwent revascularizations in December 2019 and June 2020.[3] However, the parties' disagreement centers around whether the July 2020 ischemic episode "require[ed] revascularization or [was] not amenable to revascularization" under

---

[3] It is unclear to what extent, if any, Defendant disputes Plaintiff's interpretation of Rule 4.0B's timing requirement. Defendant's assertion that Plaintiff did not undergo revascularizations at the "requisite frequency to meet Listing 4.04(B)" appears to be based on the presumption that the July 2020 episode was not a revascularization. *See* ECF No. 15 at 5 ("The December 2019 …and June 2020 … balloon angioplasties did not occur within the adjudicated period (September 3, 2020-October 4, 2023) and occurred too far away from the November 2022 angioplasty…to fall within the same 12-month period."). However, here the Court need not, and accordingly does not, decide the proper interpretation of the timing requirement in its findings.

12

Listing 4.04B. Plaintiff specifically argues that this ischemic event was *not amenable to* revascularization.

The Court interprets Listing 4.04B's "not amenable to revascularization" language as contemplating that revascularization should, and would, occur but for some impediment. In other words, a qualifying ischemic episode has two distinct features: first, the episode must "requir[e]" an angioplasty or bypass surgery (like episodes that *are* amenable to those procedures), *see* Listing 4.04B; 400E(9)(f); and, second, the procedure could not be performed due to a medical impediment. *See, e.g., Beal v. Astrue*, No. 1:10CV65 FRB, 2011 WL 3880566, at *8 (E.D. Mo. Sept. 2, 2011) ("Dr. Brown noted that Dr. Hammond had performed cardiac catheterization which revealed severe coronary artery disease that was not amenable to angioplasty and stent, and coronary artery bypass was recommended."); *see also Rose v. Chater*, 96 F.3d 1453 (10th Cir. 1996) ("Both Dr. Carter and Dr. Nolewajka stated that claimant's heart condition was not amenable to bypass surgery or angioplasty, not that it was not severe enough to warrant such treatments."); *Sullivan v. Comm'r of Soc. Sec.*, 2009 WL 648597, at *7 (S.D. Ohio Mar. 11, 2009) ("Revascularization was attempted but was unsuccessful. Plaintiff's narrowed right coronary artery was not amenable to angioplasty… Dr. Menon diagnosed chronic angina which was not amenable to angioplasty."). Applying this interpretation of Listing 4.04B to the facts in this case, the Court finds that Plaintiff has not shown, and the record does not reflect, that the July 2020 episode qualifies as a revascularization under the Listing. The record before this Court is silent as to whether, following the episode in July 2020, there was a need to perform angioplasty or bypass surgery that was impeded for some medical reason. Indeed, the record reflects that the following year, on September 7, 2021, Plaintiff underwent an "[a]ttempted, but unsuccessful angioplasty of the in-stent restenosis of the fifth obtuse marginal branch." (Tr. 1920). However, there is no similar

13

mention of an attempted and failed revascularization procedure for the ischemic episode on July 30, 2020, or of the need for such a procedure. For these reasons, the Court finds that there is insufficient evidence in the record to show that Plaintiff's July 2020 episode required, but was not amenable to, a revascularization. Accordingly, it was reasonable for the ALJ to find that Plaintiff's cardiovascular impairment does not meet Listing 4.04B.

Alternatively, Plaintiff argues that even if her impairments do not meet Listing 4.04B, the ALJ erred in her finding that such impairments are not equivalent to Listing 4.04B and did not sufficiently address or analyze her finding. The Court disagrees.

First, it is clear that the ALJ performed a thorough examination of Plaintiff's medical records with respect to her cardiovascular issues. The ALJ noted that Plaintiff "has a history of chest pain and cardiac issues," pointing to a stent placements and catheterizations in 2019 and 2020. (*Id.*). The ALJ also noted a coronary angiography in September 2021 showing:

> noncritical disease of the left main coronary artery, LAD, and right coronary arteries and the left circumflex artery; chronic total occlusion of the in-stent part of the fifth obtuse marginal branch of the left circumflex artery; unsuccessful angioplasty of the in-stent restenosis of the fifth obtuse marginal branch; chronic total occlusion of in-stent part of the mid-distal part of the right superficial femoral artery; noncritical disease of the below-knee arteries of the right lower extremity; borderline significant disease of the left superficial femoral artery; and significant disease of the proximal mid part of the left anterior tibial artery; and borderline significant disease of the left posterior tibial artery.

(Tr. 26-27). Notably, the ALJ commented that additional stenting in June 2022 and October 2022 "resulted in a complete reduction of her arterial blockages" and "[p]hysical exams otherwise generally show normal heart sounds with no gallops, friction, rub, or murmur." (Tr. 27). These normal examination findings are likewise reflected in the record, including in the examination by agency consultant Ms. Baumhoer. (*See, e.g.,* Tr. 1146; 1160; 1174; 1185; 1344, 2181, 1927).

14

Second, the Court disagrees with Plaintiff's assertion that the ALJ did not "mention possible medical equivalence" or communicate that she had undertaken such analysis. (ECF No. 16 at 3). The ALJ outlined each of Plaintiff's impairments—of which coronary artery disease was one—considered the opinion evidence of record, summarized Plaintiff's medical treatment records, and conveyed a holistic consideration of these factors in arriving at her conclusions. For example, the ALJ notes that she analyzed the effects of Plaintiff's various conditions, such as her weight, "in combination with, and on, the claimant's other medically determinable impairments, as well as the claimant's other body systems, in determining whether the claimant meets or equals a listed impairment." (Tr. 24); *see also* Tr. 22 ("The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functioning capacity."); Tr. 30 (finding medical opinion inconsistent with "the record as a whole…which shows that the claimant's impairments, particularly her heart condition which causes weakness and leg pain, limit her to a sedentary exertional level"). Such statements reflect that the ALJ has "properly considered the combined effects of [Plaintiff]'s impairments." *Hajek v. Shalala,* 30 F.3d 89, 92 (8th Cir.1994) (statement that ALJ did not consider combined effects of impairments was unfounded where ALJ noted each impairment and found that the impairments, alone or combined, were not of listing-level severity). The above analysis resulted in the ALJ's conclusion that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 22).

The ALJ's analysis is sufficient. "While an ALJ is required to consider evidence of listed impairments and determine whether they meet or are equivalent to any of the listed impairments, the fact that the ALJ does not elaborate on this conclusion does not require reversal where the record supports his overall conclusion." *Perren v. Astrue*, No. 1:10CV190 FRB, 2012 WL 263104,

15

at *13 (E.D. Mo. Jan. 27, 2012) (citing *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir.2006)) (internal quotations and alterations omitted).  "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Id.* (citing *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992)).  Accordingly, the Court finds that the ALJ's findings at Step Three with regard to Listing 4.04B were supported by substantial evidence.

### C.     Change in Regulations

Plaintiff's second argument pertains to revised Social Security regulations regarding past relevant work. At the time the ALJ decided Plaintiff's claim, a claimant's past work generally qualified as "past relevant work" if, *inter alia*, it was performed in the previous fifteen years. 20 C.F.R. § 404.1565(a). A few months after the ALJ's decision, the agency effected revised regulations, reducing the past relevant work period from fifteen years to five years. 89 Fed. Reg. 27653 (Apr. 18, 2024). Plaintiff asserts that, because the appeal of her claim was pending when these new regulations went into effect, remand is appropriate in order that the agency may reconsider her claim under the new parameters for past relevant work.

As Defendant correctly points out, Social Security Ruling (SSR) 24-2p, which implements the revised regulation, states that the agency "expect[s] that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." SSR 24-2p, 89 Fed. Reg. 48479 (June 6, 2024).  Defendant also is correct that this approach is consistent with the Eighth Circuit's approach. *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 967 (8th Cir. 2003) (rejecting a request similar to Plaintiff's because "it would be improper to apply" a new regulation "retroactively" to a claim on appeal, because "[t]he SSA clearly and unambiguously explained when the new listings were

16

issued that they apply to only those cases that have not resulted in a final administrative decision by February 19, 2002").

Accordingly, the Court will follow the Eighth Circuit's approach and decline to remand the case solely due to new Social Security regulations, which the agency intended to promulgate without retroactive effect. Defendant granted that, should Plaintiff's claim be remanded on other grounds, the ALJ would employ the new regulations; however, such is not the case here.

### VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

*[signature]*

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2025.